

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | |
|---|---|
| Nesreen Boutros, <br>      Employee, <br> v. <br> Amazon, <br>      Employer, <br> And <br> American Zurich Ins. Co., <br>        Carrier. | Docket No.: 2016-06-0418 <br><br> State File Number: 32833-2015 <br><br> Judge Kenneth M. Switzer |

## EXPEDITED HEARING ORDER GRANTING
## ADDITIONAL MEDICAL BENEFITS

This case came before the undersigned Workers' Compensation Judge on September 20, 2016, on the Request for Expedited Hearing filed by Nesreen Boutros pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is the compensability of her claim. The central legal issues are whether Ms. Boutros is likely to prevail at a hearing on the merits that her injury arose primarily out of and in the course and scope of her employment as well as her entitlement to further medical treatment and temporary disability benefits. For the reasons set forth below, the Court holds Ms. Boutros is likely to prevail at a hearing on the merits that her injury arose primarily out of and in the course and scope of her employment with Amazon and she is entitled to further medical benefits. Her claim for temporary disability benefits is denied at this time.[1]

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix. As for the exhibits, the parties did not stipulate to the medical records' admissibility on the Dispute Certification Notice. Therefore, in advance of the Expedited Hearing, Amazon filed certifications and complete medical records for Ms. Boutros in accordance with Tennessee Compilation Rules and Regulations 0800-02-21-.16(6)(b) (2015). The records totaled 850 pages, and much of the treatment they document is irrelevant to the claim. The Tennessee Workers' Compensation Appeals Board discouraged the admission into evidence of duplicative records and "voluminous medical records that have nothing to do with Employee's injury," in *Love v. Delta Faucet Company*, No. 2015-07-0195, 2015 TN Wrk. Comp. App. Bd. LEXIS ___, at slip op. 5 (Tenn. Workers' Comp. App. Bd. Sept. 19, 2016). Accordingly, at the outset of the hearing, the parties stipulated to the medical records in

## History of Claim

Ms. Boutros[2] worked as a packer for Amazon. On April 23, 2015, while handling a heavy item and placing it inside a box, she felt and heard a "crack" in her neck along with immediate pain. About ten minutes later, she began feeling a burning sensation and pain in her neck, right shoulder and right arm. Ms. Boutros visited the in-house clinic. After minor treatment failed to abate the pain, clinic personnel directed her to Care Spot, and Ms. Boutros signed a Choice of Physicians form selecting Care Spot.[3] (Ex. 12.) Care Spot provided generalized care twice before referring her to Tennessee Orthopaedic Alliance. (*See generally* Ex. 3.) Dr. Kyle Joyner of TOA diagnosed muscle strain, recommended a referral to physiatry, and placed her on temporary restrictions. (Ex. 5.)

Ms. Boutros subsequently came under the treatment of Dr. Jeffery Hazlewood. Although his name appears on the original panel provided to her (Ex. 12), there is no written indication that Ms. Boutros voluntarily selected him from that panel or a subsequent panel of physiatrists. Ms. Boutros wrote on her Petition for Benefit Determination (T.R. 1) that she selected Dr. Hazlewood from a panel, but the only Choice of Physicians form in evidence is the previously-referenced document designating Care Spot. Ms. Boutros' Affidavit (Ex. 1) indicates staff at Amazon's clinic referred her to Dr. Hazlewood. However, she testified that Dr. Joyner referred her to Dr. Hazlewood, although his records only indicate a recommendation referring her to physiatry.

Regardless, Ms. Boutros visited Dr. Hazlewood four times over the next five months, and his treatment consisted of opioid prescriptions, physical therapy and home exercise. (*See generally* Ex. 6.) Dr. Hazlewood assigned restrictions and ordered an MRI. *Id.* at 2. At the first visit, he concluded, "I would have to state that the pain is caused by the work greater than 50%." *Id.* at 3. Over time, Dr. Hazlewood changed her

---

Exhibits 3 through 8. Of these, Ms. Boutros, who is self-represented, filed Exhibit 8. She highlighted portions of the records and did not number the pages. After the Expedited Hearing, for ease of reference only, the Court scanned and numbered Exhibit 8's pages but otherwise made no alterations to the documents and left duplicative records intact to preserve the integrity of the evidence. The Court appreciates the parties' cooperation in narrowing the medical records down to only those which assist in reaching a determination of the issues.

[2] Ms. Boutros is Egyptian and speaks both Arabic and English. During the Expedited Hearing, she provided testimony directly and through an interpreter. The recitation of her testimony is from her in-court testimony and that obtained through the interpreter.

[3] At the conclusion of the hearing, the Court noted neither party filed First Report of Injury or Choice of Physicians forms. Amazon's counsel advised that the forms were prepared, but counsel was unable to produce copies at that time. As for the Choice of Physician form, Tennessee Code Annotated section 50-6-204(a)(3)D)(i) (2015) provides that the employer "shall maintain a copy of the completed form in the records of the employer and shall produce a copy of the completed form upon request by the bureau." The Court allowed counsel twenty-four hours to submit these forms, which Amazon filed later that day. The Court marked the First Report of Injury as late-filed Exhibit 11 and the Choice of Physicians form as late-filed Exhibit 12.

prescription and added two new opioids to the list. *Id.* at 5. Ultimately, he released her from care in September 2015. *Id.* at 8.

As for her release from treatment, Dr. Hazlewood wrote in a one-page September 14, 2015 office note that Ms. Boutros was forty minutes late to her appointment on that date, and she "no-showed" at his office on two previous occasions. He further observed she was discharged from physical therapy for "excessive episodes of cancels and no-shows." Dr. Hazlewood chose to take the same action. He released her for "non-compliancy [sic]," pronounced her at Maximum Medical Improvement (MMI), and assigned a zero-percent impairment rating. He pointed out the insurance company "agree[s] as well with my opinion regarding non-compliancy. [sic] Again, she cannot be in significant pain if she is not coming or no showing to so many visits, coming late, missing therapy, etc." *Id.*

Ms. Boutros testified concerning her absence and tardiness for appointments. She explained the medications caused drowsiness and confusion, making it unsafe for her to drive long distances to work and to Dr. Hazlewood's office. Additionally, Ms. Boutros stated that she visited another physician, "Dr. Youssef," who practices on Bell Road near her home. He advised she should not drive while taking the prescribed medications. Ms. Boutros offered no medical records in support of this assertion. She disputed Dr. Hazlewood's observation regarding her pain, repeatedly testifying about continuing pain in her neck and shoulder area and down into her arm, which is different from pain she experienced in those areas prior to the work incident. She contended the pain prevents her from returning to work and interferes with daily activities regarding her children.

In between visits with Dr. Hazlewood, Ms. Boutros visited Dr. Robert Weiss, a neurosurgeon, on July 14, 2015, although neither side introduced evidence explaining how Ms. Boutros came under his care. (Ex. 7.) Ms. Boutros reported benefits from physiotherapy sessions. *Id.* at 1. Dr. Weiss viewed her MRI results (Ex. 10) and concluded that it represented a "normal cervical MRI." (Ex. 7 at 3.) Dr. Weiss did not find an "acute surgical problem," but suggested she might benefit from additional physiotherapy. *Id.* He placed her at MMI and assigned no restrictions. Ms. Boutros testified Dr. Weiss informed her that surgery provided little hope for improvement.

Ms. Boutros' work history, post-incident, is unclear. She returned to work for an unspecified period and presumably worked within Dr. Hazlewood's restrictions, although her testimony on this issue was inconclusive. Ms. Boutros applied for and received short-term disability payments from September 18, 2015, through February 26, 2016. (Ex. 8 at 28.) Amazon discharged her on January 26, 2016, for "job abandonment." *Id.* at 29. Afterward, Ms. Boutros applied for unemployment insurance benefits, but was denied due to "non-work related health reasons." (Ex. 8 at 30.)

Amazon offered no witnesses but contended Ms. Boutros suffered from pre-existing conditions, rather than a work-related incident, which caused her complaints to her neck, arm and shoulder. To that end, Amazon submitted medical records from Dr.

3

Paul Talley at Nashville General Hospital from 2014, arguing these records indicated previous problems with Ms. Boutros' neck, shoulder and arm. (*See generally* Ex. 4.) Ms. Boutros acknowledged prior deep vein thrombosis (DVT) issues, but asserted they resolved before the injury at work. In support of her position, she offered medical records indicating her overall recovery from the DVT issue, and work records documenting her excellent productivity. (Ex. 8 at 32-41; Ex. 9.)

Further examination of Exhibit 8 reveals that Ms. Boutros continued treatment with Dr. Talley and Dr. Pradumna Singh at Nashville General Hospital after her September 2015 release by Dr. Hazlewood. Dr. Talley signed several documents to assist Ms. Boutros' application for short-term disability benefits. (Ex. 8 at 11-15.) He also signed a medical certificate to assist her in filing for unemployment benefits. *Id.* at 18. Dr. Talley did not indicate in any of the forms that her work caused her problem. In one form, he noted an onset for DVT in 2014 but also opined she had a cervical disk issue. *Id.* at 13. In a Medical Certificate for unemployment insurance, he noted "DVT Right Arm Hx/Hx of Chest Pain." *Id.* at 18. However, the records additionally revealed a sonograph report dated May 29, 2014, describing no evidence of DVT of the left or right upper extremity. *Id.* at 24.

Ms. Boutros file a Petition for Benefit Determination seeking "compensation and medical expenses." After attempts at mediation failed, the mediator filed a Dispute Certification Notice designating medical and temporary disability benefits as disputed issues. Ms. Boutros filed a Request for Expedited Hearing.

At the Expedited Hearing, Ms. Boutros contended she remains in pain and needs medical treatment relative to a work-related injury. She asked for compensation for lost time from work and the injury, additional medical treatment and reinstatement of her employment at Amazon. Amazon contended that Ms. Boutros' medical condition did not relate to work, but was a pre-existing condition. Amazon also asserted that Dr. Hazlewood concluded her problem did not arise primarily out of and in the course and scope of employment.

### Findings of Fact and Conclusions of Law

The following legal principles govern this case. In general, Ms. Boutros bears the burden of proof on all prima facie elements of her workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). She need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Rather, at an expedited hearing, Ms. Boutros has the burden to come forward with sufficient evidence from which this Court can determine that she is likely to prevail at a hearing on the merits. *Id.* This

lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing," but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence. *Buchanan,* 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6.

Applying these general legal principles to the facts of this case, and after review of the evidence introduced at the Expedited Hearing, the Court makes the following findings of fact and conclusions of law.

*Causation*

The Workers' Compensation Law requires that the injury for which Ms. Boutros seeks benefits arise "primarily" out of and in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(13) (2015). An injury arises primarily out of and in the course and scope of employment "only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B) (2015). Further, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(13)(C) (2015).

Only one witness—Ms. Boutros—testified. The Court finds Ms. Boutros was open and forthcoming in her testimony and holds she was a credible witness. She described the work incident of April 23, 2015 in sufficient detail, and Amazon did not refute this testimony. With regard to other potential causes, Ms. Boutros acknowledged her pre-existing issues with DVT in her right arm, but repeatedly articulated a difference between the pain resulting from that problem and the pain she experienced from the injury of April 23, 2015. Ms. Boutros responded to all question on cross-examination in a direct and forthright manner. No questions or responses gave rise to any doubt regarding her credibility.

Ms. Boutros produced evidence demonstrating her excellent work performance. Amazon made no effort to deny her productivity and work ethic before the injury of April 23, 2015. Thus, the Court finds that Ms. Boutros worked without limitation for Amazon until the work-related event of April 23, 2015.

Amazon's contention that Ms. Boutros' injury is a pre-existing condition involving DVT is without merit. Dr. Hazlewood, the physician of Amazon's choosing, concluded in his first office visit note, "Based on her description with pain starting with lifting the heavy box, I would have to state that the pain is caused by the work greater than 50%." He articulated this conclusion applying the statutory definition above. Dr.

5

Hazlewood did not alter his causation opinion when he discharged Ms. Boutros from treatment, and no other medical evidence contradicts this conclusion.[4] The forms Dr. Talley completed conspicuously do not answer the question of work-relatedness. However, the submitted records contain a sonograph, ordered by Dr. Talley, of May 29, 2014, which ruled out deep vein thrombosis of the left and right upper extremity.

Therefore, based on these documents and the testimony of Ms. Boutros, as a matter of law, the Court holds that the Ms. Boutros is likely to prevail at a hearing on the merits that her injury arose primarily out of and in the course and scope of employment. In light of this holding and her continuing complaints of pain, Ms. Boutros is entitled to the medical benefits outlined below.

*Medical Benefits*

Pursuant to Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015), "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter."

Here, although Amazon compensated Dr. Hazlewood, this alone does not confer the status of authorized treating physician upon him. Amazon initially provided a panel on the date of injury, and Ms. Boutros selected Care Spot. Care Spot referred her to TOA, where she saw Dr. Joyner, the last authorized treating physician. Dr. Joyner recommended a referral to physiatry but did not mention Dr. Hazlewood by name. At that point, the Workers' Compensation Law required Amazon to offer a panel of specialist physicians. *See* Tenn. Code Ann. § 50-6-204(a)(3)(E) (2015).

Although Ms. Boutros' PBD states that she chose Dr. Hazlewood from a panel, her affidavit contradicts this, and the Court infers that the discrepancy is due, at least partially, to the language barrier. Notably, Amazon did not introduce a Choice of Physicians form indicating Ms. Boutros chose Dr. Hazlewood from a panel provided by Amazon after Dr. Joyner's referral. The Court finds Amazon failed to offer a panel of physiatry specialists. Therefore, the Court holds, as a matter of law, that Ms. Boutros remains entitled to medical benefits. Amazon shall immediately provide Ms. Boutros with a panel of physiatrists from which she may select a new authorized treating physician for treatment of her work-related injury.

---

[4] Dr. Hazlewood acknowledged Ms. Boutros' pain was a result of her work injury but nonetheless released her for "non-compliancy." Ms. Boutros credibly explained she missed appointments as a result of the medications Dr. Hazlewood prescribed. The Court holds her actions were reasonable in this regard.

*Disability Benefits*

With regard to Ms. Boutros' request for compensation for time when she was unable to work due to the injury – i.e., temporary total disability benefits – an injured worker must prove that she was: (1) totally disabled to work by a compensable injury; (2) that there is a causal connection between the injury and her inability to work; and (3) the duration of that period of disability. *James v. Landair Transport, Inc.,* No. 2015-02-0024, 2015 TN Wrk. Comp. App. Bd. LEXIS 28, at *16 (Tenn. Workers' Comp. App. Bd. Aug. 26, 2015) (quoting *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn. 1978)). As Ms. Boutros provided insufficient medical proof to establish she is likely to prevail at trial on this issue, the Court holds she is not entitled to disability benefits at this time.

Ms. Boutros additionally seeks compensation for her work injury. At this interlocutory stage, however, an award of permanent disability benefits is not warranted. She may seek these benefits at a final compensation hearing. Finally, regarding her request for job reinstatement, the Workers' Compensation Law does not authorize such a remedy. *See* Tenn. Code Ann. § 50-6-238(a)(3) (2015).

*Conclusion*

Ms. Boutros has come forward with sufficient evidence from which this Court holds as a matter of law that she is likely to prevail at a hearing on the merits regarding the compensability of her claim. Therefore, her request for additional medical benefits is granted. Her request for temporary disability benefits is denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Amazon or its workers' compensation carrier shall provide Ms. Boutros medical treatment for these injuries as required by Tennessee Code Annotated section 50-6-204 (2015), to be re-initiated by the provision of a panel of physiatrists. Medical bills shall be furnished to Amazon or its workers' compensation carrier by Ms. Boutros or the medical providers.

2. This matter is set for an Initial (Scheduling) Hearing on **November 8, 2016, at 8:45 a.m. Central.**

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period

7

of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 23rd day of September, 2016.**

Judge Kenneth M. Switzer
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Kenneth M. Switzer, Court of Workers' Compensation Claims. You must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice

8

of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Affidavit of Nesreen Boutros
2. Wage statement
3. Care Spot records
4. Nashville General Hospital records
5. TOA records
6. Dr. Hazlewood records
7. Dr. Weiss records
8. Miscellaneous: Includes therapy records; disability insurance application and payment history; medical appointment dates; unemployment insurance records; Drs. Singh and Talley records; Vanderbilt University Medical Center records; and Amazon termination letter and performance evaluations
9. Amazon performance evaluations
10. MRI report
11. First Report of Injury
12. Choice of Physicians form

Technical record:[5]
1. Petition for Benefit Determination, March 11, 2016
2. Amazon Pre-mediation Position Statement, April 19, 2016
3. Amazon's Additional Issues for DCN, April 28, 2016
4. Dispute Certification Notice, May 4, 2016
5. Request for Expedited Hearing, May 6, 2016
6. Employer's Response in Opposition to Employee's Motion for Expedited Hearing
7. Employer's Prehearing Brief, August 3, 2016
8. Order of Continuance, August 17, 2016

---

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 23rd day of September, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Nesreen Boutros, self-represented Employee | x | | x | Nesreen.boutros@yahoo.com; 4900 Ripple Cove, Antioch, TN 37013 |
| Troy Hart, Tiffany Sherrill, Employer's Counsel | | | x | wth@mijs.com; tbsherrill@mijs.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

11